**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                                )
TYRONE JENKINS,                                  )
2236 Alice Avenue                                    )
Oxon Hill, MD 20211                               )
                                                                )
Plaintiff,                                                    ) Civil Action No. _____
                                                                )
            v.                                                  )
                                                                ) JURY DEMANDED
DISTRICT OF COLUMBIA                       )
1350 Pennsylvania Avenue, NW              )
Washington, D.C. 20004                         )
                                                                )
and                                                           )
                                                                )
QUINCY L. BOOTH, in his capacity as   )
Director of the DISTRICT OF COLUMBIA )
DEPARTMENT OF CORRECTIONS        )
2000 14th Street, NW, Seventh Floor       )
Washington, D.C. 20009                         )
                                                                )
Defendants.                                              )
_____)

### COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF AND JURY DEMAND

### INTRODUCTION

1.  This is an action against Defendants, District of Columbia and Quincy L. Booth, Director

    of the District of Columbia Department of Corrections ("DOC," "the Department"), for

    declaratory and injunctive relief, and monetary damages under Title VII of the Civil

    Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the District of Columbia

    Human Rights Act, D.C. Code §§ 2-1401-01 *et seq.* ("DCHRA").  This Complaint seeks

    to redress the harm that Plaintiff, Tyrone Jenkins, suffered as a result of Defendants'

    retaliation against him based on his previous engagement in protected activity.

2. Mr. Jenkins was a dedicated corrections officer for over 30 years.  During his
   employment with DOC, he served as an elected union official, representing other
   corrections officers.  He repeatedly spoke out against sexual harassment of female
   officers, testifying in class actions, and filing EEO complaints on behalf of other officers.
   Mr. Jenkins also filed a complaint on his own behalf with the District of Columbia Office
   of Human Rights ("DC OHR") in July 2015.  In December 2015, Mr. Jenkins retired
   pursuant to the Department's mandatory retirement age.  In 2016, when Mr. Jenkins
   sought reemployment in a new position, the Department refused to rehire him in
   retaliation for his earlier protected activity, in violation of 42 U.S.C. §§ 2000e *et seq.* and
   D.C. Code §§ 2-1401-01 *et seq.*

## JURISDICTION AND VENUE

3. This Court has jurisdiction over Mr. Jenkins' claims under Title VII pursuant to 28
   U.S.C. § 1331, as they contain a federal question.  This Court has supplemental
   jurisdiction over Mr. Jenkins' claims under the DCHRA pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), as the events or omissions
   giving rise to Mr. Jenkins' claims occurred in the District of Columbia.

## PARTIES

5. Mr. Jenkins, Plaintiff, is an adult resident of the state of Maryland and was at all times
   relevant to this Complaint an employee or an applicant for employment within the
   meaning of 42 U.S.C. § 2000e(a), 42 U.S.C. § 2000e-3(a), and employee within the
   meaning of D.C. Code §§ 2-1401.02(9) and (21).  At all times relevant to this Complaint,
   he was seeking employment from the Department.

6.  Defendant District of Columbia is a governmental entity and municipal corporation.  The Department of Corrections, whose actions give rise to Mr. Jenkins' claims, is an agency of the District of Columbia.  At all times relevant to this Complaint, the District of Columbia and the Department of Corrections constituted employers within the meaning of 42 U.S.C. § 2000e(b) and D.C. Code § 2-1401.02(10).

7.  At all times relevant to this Complaint, the Director of the Department of Corrections was an employer within the meaning of D.C. Code § 2-1401.02(1).  The business address of the Director of the Department of Corrections is: 2000 14th Street, NW, Seventh Floor, Washington, D.C. 20009.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.  On August 29, 2016, Mr. Jenkins met with an EEO Counselor in the Office of Labor Relations and Collective Bargaining regarding his claim of retaliation arising from the Department's refusal to rehire him.  On September 12, 2016, Mr. Jenkins received an Exit Letter & Notice of Right to File a Formal Complaint.

9.  On September 14, 2016, Mr. Jenkins submitted an Employment Intake Questionnaire with DC OHR.  On October 11, 2016, Mr. Jenkins filed a Charge of Discrimination with DC OHR and the Equal Employment Opportunity Commission ("EEOC") alleging retaliation.

10. On August 25, 2017, Mr. Jenkins, through counsel, informed DC OHR that he wished to withdraw his complaint.

11. On August 29, 2017, DC OHR sent an administrative dismissal order directly to Mr. Jenkins without copying his counsel.  DC OHR provided a copy of the order to Mr. Jenkins counsel on October 25, 2017.

12. On November 16, 2017, Mr. Jenkins received a right to sue letter from the Department of Justice.

13. Mr. Jenkins exhausted all administrative remedies required to bring the instant Complaint.

## FACTUAL ALLEGATIONS

14. Mr. Jenkins began working for DOC as a Correctional Officer in March 1985. In 2006, his fellow officers elected him as Treasurer for the union. He served in this position for one year. In 2010, Mr. Jenkins became the Chief Shop Steward, another elected position. He served in this position until 2012, when the union members elected him as Vice Chair. Mr. Jenkins served as the Vice Chair of the union until his mandatory retirement in December 2015.

15. As a union member and then later as Chief Shop Steward and Vice Chair, Mr. Jenkins repeatedly spoke out against discrimination in the workplace. In 1995, Mr. Jenkins participated as a witness in a class action law suit filed by female DOC employees who alleged the Department subjected them to sexual harassment. In 2009, Mr. Jenkins raised allegations of sexual harassment on behalf of a female officer. The Department referred the allegations to a Special Inspector for review.

16. Mr. Jenkins participated as a witness in another civil action filed by several female officers in 2013. Their complaint named Joseph Pettiford, among others, as a defendant. Mr. Jenkins provided information that he observed male officers inappropriately touch female officers daily. The Department settled the lawsuit in March 2015.

17. In or about February or March 2015, Mr. Jenkins received a report from a female officer that a male officer had sexually harassed her. The female officer told Mr. Jenkins that

after she reported the harassment she was moved to a different location.  Mr. Jenkins

spoke with the Department about the report and stated that the Department should not

have moved the female officer because that constituted retaliation.

18. In or about February or March 2015, Mr. Jenkins was present during a meeting between

Warden William Smith and a second female officer.  Mr. Jenkins attended the meeting as

the officer's union representative.  During this meeting, Warden Smith directed the

female officer to remove her jacket.  The female officer began to cry as a result of the

order.  Warden Smith threatened the female officer with discipline.

19. On March 13, 2015, Mr. Jenkins was present during a meeting between Warden Smith

and a third female officer.  Mr. Jenkins attended the meeting as the officer's union

representative.  During the meeting, Warden Smith ordered the female officer to unzip

her sweater.  The female officer began to cry.  Mr. Jenkins informed her that she did not

need to do anything that made her uncomfortable.  He then informed Warden Smith that

the request was inappropriate, and that he intended to file a report of sexual harassment.

20. On March 18, 2015, Mr. Jenkins received a letter of counseling regarding the appropriate

advice a union representative may provide to an employee, suggesting that the advice he

had given was in some way inappropriate or misplaced.

21. On March 30, 2015, Mr. Jenkins contacted an EEO Officer with the Department to report

Warden Smith's harassment of the female officer during the March 15, 2015 meeting.

On the same day, Mr. Jenkins also reported the sexual harassment of the other female

officer who met with Warden Smith in February or March 2015, and the female officer

who reported that the Department moved her after she reported sexual harassment.

22. On April 2, 2015, Mr. Jenkins attended a third shift roll call meeting.  Major Kevin
    Hargrave told Mr. Jenkins that he was not permitted to represent any of the employees in
    the roll call, and ordered Mr. Jenkins to leave.  Mr. Jenkins asked Major Hargrave who
    gave the order to remove him from the roll call and Major Hargrave told Mr. Jenkins that
    the order came from Warden Smith.  Major Hargrave told Mr. Jenkins that Warden Smith
    gave the order because Mr. Jenkins assisted a female officer in filing a sexual harassment
    report.  Mr. Jenkins told Major Hargrave that, as the Vice Chair for the union, he was
    permitted to attend the roll call.  Sargent Hosea Green subsequently pushed Mr. Jenkins
    out of the doorway to the roll call, injuring Mr. Jenkins.

23. On April 3, 2015, Mr. Jenkins filed a complaint of retaliation with the DOC EEO
    coordinator, Tecora Martin, and the Director of the Department, Thomas Faust.

24. On April 20, 2015, Mr. Jenkins received a letter of advanced written notice.  In the letter,
    Major Hargrave proposed a nine-day suspension for insubordination related to the
    April 2, 2015 incident at the third shift roll call.

25. On July 2, 2015, Mr. Jenkins filed an Unfair Labor Practice Complaint ("ULP
    Complaint") with the Public Employee Relations Board ("PERB") regarding the letter of
    counseling and proposed suspension.  Mr. Jenkins named Warden Smith and Major
    Pettiford in the ULP Complaint.

26. On July 20, 2015, Mr. Jenkins filed a Charge of Discrimination with DC OHR and the
    EEOC, alleging that the March 18, 2015 letter, the April 2, 2015 order, and the
    April 20, 2015 proposed suspension were retaliation for his opposition to sexual
    harassment related to Warden Smith's order to the female officer on March 13, 2015.

27. On July 30, 2015, Deputy Director Toni Perry upheld the proposed suspension, lowering
it to five days.

28. On September 10, 2015, Director Faust upheld the five-day suspension.  Pursuant to
DOC policy, the Department did not place the suspension in Mr. Jenkins' personnel file
because his ULP Complaint was unresolved.

29. On October 14, 2015, Mr. Jenkins used sick leave and did not report to work.  When he
returned to work on October 15, 2015, Lieutenant Marshall Day informed Mr. Jenkins
that pursuant to an order from Major Pettiford, Mr. Jenkins was not permitted in the
facility.  Mr. Jenkins left the facility grounds and called Major Pettiford.  The Major
confirmed that Mr. Jenkins was not permitted to enter the facility.  Major Pettiford did
not issue any paperwork confirming this order.  As a result, Mr. Jenkins called Lieutenant
Ma Rian Boyed to ask what he should do.  Lieutenant Boyd informed Mr. Jenkins that if
there was no paperwork placing him on administrative leave, he would mark Mr. Jenkins
as still using sick leave.  Mr. Jenkins then called Chief Supervisor Wanda Patten.  Chief
Patten requested administrative leave paperwork from Major Pettiford.  When Major
Pettiford failed to provide the necessary paperwork, Chief Patten contacted Director
Faust.  Chief Patten instructed Mr. Jenkins to report to work unless and until the
Department issued paperwork placing him on administrative leave.  Mr. Jenkins
attempted to report to work multiple times.  However, every time he attempted to report
to work, he was informed that he was not permitted in the facility on the order of Major
Pettiford.

30. The Department did not permit Mr. Jenkins to enter the facility or to work after October
14, 2015.  The Department never provided Mr. Jenkins with the reason for barring him

from the facility.  The Department forced Mr. Jenkins to use sick leave from October 25, 2015 until December 2015.

31. On December 13, 2015, Mr. Jenkins retired from the Department pursuant to DOC's mandatory retirement policy.  In its notice to Mr. Jenkins, the Department stated that the mandatory retirement "in no way reflect[ed] on [his] dedicated work performance."  The Department also confirmed that Mr. Jenkins was permitted to apply for "reemployment in any position" for which he was qualified.  Mr. Jenkins examined his personnel file at the time of his retirement and it did not contain any negative information about him, his conduct, or his performance.

32. In 2016, Mr. Jenkins applied for a Correctional Officer position with CCA, a contractor with DOC.  On June 22, 2016, Mr. Jenkins received a conditional offer of employment from CCA to work as a Correctional Officer at the Correctional Treatment Facility.  As part of the pre-employment process, CCA required Mr. Jenkins to successfully complete a pre-employment check to verify his employment history and a criminal background check.  Mr. Jenkins met all of the pre-employment requirements and began working for CCA on July 18, 2016.

33. At the time it hired Mr. Jenkins, CCA was in the process of transitioning its employees to the District of Columbia because its contract with the Department was set to expire on January 31, 2017.  Mr. Jenkins submitted the necessary paperwork to transition to a DOC employee.

34. On July 18, 2016, Mr. Jenkins signed a release authorizing the Department to conduct a criminal background check.  The release did not permit the Department to conduct a pre-employment check.  A pre-employment check was not required because Mr. Jenkins was

already employed by a DOC contractor.  A notary public was present at the time

Mr. Jenkins signed the release.  DOC subsequently altered the signature on Mr. Jenkins'

release form and notarized it with the date of July 22, 2016.

35. The Department improperly conducted a pre-employment check on Mr. Jenkins.

36. On August 9, 2016, the Department informed CCA that all members of Mr. Jenkins

    training class were cleared for rehire/to transition to DOC employees except for Mr.

    Jenkins.  CCA suggested to Mr. Jenkins that he reach out to DOC human resources to

    determine why his clearance was not finished.

37. On August 10, 2016, the DOC Office of Human Resource Management informed Mr.

    Jenkins that it was waiting for completion of his background check.

38. On August 23, 2016, Desiree Townes, Chief of Human Resources Management informed

    Mr. Jenkins that due to the results of the background investigation, DOC determined that

    he was not eligible for employment.

39. Nothing in Mr. Jenkins' record changed between July 2016, when Mr. Jenkins became a

    CCA employee after meeting all pre-employment requirements, including a background

    check, and August 2016, when DOC determined him to be ineligible for rehire due to the

    results of his background investigation.

40. Mr. Jenkins continued working for CCA until the contract finished on January 31, 2017.

    Had DOC determined Mr. Jenkins to be eligible for employment and rehired him upon

    the conclusion of the contract with CCA, he would have continued in his position as a

    DOC employee.

41. On April 28, 2017, PERB held that the Department's 2015 suspension of Mr. Jenkins was

    improper.

42. Mr. Jenkins suffered a loss of income following the Department's refusal to rehire him. He also suffered harm to his professional reputation as a result of the Department's background investigation and its refusal to offer employment to him.  Mr. Jenkins experienced emotional distress due to the Department's treatment of him and the refusal to rehire him.

## STATEMENT OF CLAIMS

### COUNT I: RETALIATION IN VIOLATION
### OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

43. Mr. Jenkins incorporates all of the allegations contained in paragraphs 1 through 42 as if stated herein.

44. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, prohibits employers from taking action against an employee because of the employee's protected activity.

45. Mr. Jenkins engaged in protected activity when he opposed the Department's discriminatory and retaliatory employment practices.  This protected activity included his March 2015 statements opposing Warden Smith's harassment of a female corrections officer, and his July 2015 filing of a Charge of Discrimination with DC OHR and EEOC.

46. Defendants retaliated against Mr. Jenkins when they subsequently refused to rehire him.

47. Defendants' actions have caused and continue to cause Mr. Jenkins to suffer harm and damages, including lost wages, loss in employment benefits, loss of career, loss of promotional opportunities, pain and suffering, humiliation, stress and anxiety, harm to his reputation, damage to his personnel record, and loss of professional development.

## COUNT II: RETALIATION IN VIOLATION OF
## THE DC HUMAN RIGHTS ACT

48. Mr. Jenkins incorporates all of the allegations contained in paragraphs 1 through 48 as if stated herein.

49. The District of Columbia Human Rights Act, D.C. Code §§ 2-1401-01 *et seq.*, prohibits employers from taking action against an employee because of the employee's protected activity.

50. Mr. Jenkins engaged in protected activity when he opposed the Department's discriminatory and retaliatory employment practices.  This protected activity included his March 2015 statements opposing Warden Smith's harassment of a female corrections officer, and his July 2015 filing of a Charge of Discrimination with DC OHR and EEOC.

51. Defendants acted with malice when they when they subsequently refused to rehire him in retaliation for his prior protected activity.

52. Defendants' actions have caused and continue to cause Mr. Jenkins to suffer harm and damages, including lost wages, loss in employment benefits, loss of career, loss of promotional opportunities, pain and suffering, humiliation, stress and anxiety, harm to his reputation, damage to his personnel record, and loss of professional development.

## PRAYER FOR RELIEF

**NOW WHEREFORE**, Mr. Jenkins prays this Court to:

a. Enter judgment in his favor against Defendants for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*;

b. Enter judgment in his favor against Defendants for retaliation in violation of the District of Columbia Human Rights Act, D.C. Code §§ 2-1401-01 *et seq.*;

c. Instate Mr. Jenkins to the position of Corrections Officer;

d.   Award Mr. Jenkins restoration of lost benefits;

e.   Award Mr. Jenkins compensation of lost wages;

f.   Award Mr. Jenkins compensatory damages in an amount to be shown at trial, but in no event less than $300,000;

g.   Award Mr. Jenkins punitive damages in an amount to be shown at trial;

h.   Award Mr. Jenkins reimbursement of the attorneys' fees and costs he has expended in litigating this matter; and

i.   Grant him such other relief as justice may require.

## JURY DEMAND

Mr. Jenkins seeks trial by jury on all matters and issues that can be so tried.

Dated: December 20, 2017                    Respectfully submitted,

Ari M. Wilkenfeld (Bar No. 461063)
Wilkenfeld, Herendeen & Atkinson
Attorney for Tyrone Jenkins
171 Connecticut Avenue, NW, Third Floor
Washington, D.C. 20009
T: (202) 765.2253
F: (202) 600.2792
ari@wilkenfeldlaw.com

_____

Meghan A. Droste (Bar No. 1010673)
Wilkenfeld, Herendeen & Atkinson
Attorney for Tyrone Jenkins
171 Connecticut Avenue, NW, Third Floor
Washington, D.C. 20009
T: (202) 765.2253
F: (202) 600.2792
meghan@wilkenfeldlaw.com

_____

Lauren E. Naylor (Bar No. 1044317)
Wilkenfeld, Herendeen & Atkinson
Attorney for Tyrone Jenkins
171 Connecticut Avenue, NW, Third Floor
Washington, D.C. 20009
T: (202) 765.2253
F: (202) 600.2792
lauren@wilkenfeldlaw.com